UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WELLS FARGO BANK, NATIONAL ASSOCIATION *as Trustee for ABFC 2006-OPT Trust, Asset Backed Funding Corporation Asset-Backed Certificates, Series 2006-OPT3*,

Plaintiff,

-against-

OSWALD PETERS, et al.,

Defendants.

25-CV-5397 (RA) (RFT)

**REPORT & RECOMMENDATION**

**TO THE HONORABLE RONNIE ABRAMS, UNITED STATES DISTRICT JUDGE:**

Pending before the Court is Plaintiff's motion for a default judgment of foreclosure and sale (the "Motion"). For the reasons set forth below, I respectfully recommend that Plaintiff's motion be GRANTED, that the Court enter a judgment of foreclosure and sale and appoint Scott H. Siller as referee to conduct a foreclosure auction of the mortgaged premises; that Plaintiff be awarded $3,400.00 in attorneys' fees and $2,073.50 in costs; and that the Complaint as to Defendants John Doe #1-12 (the "John Doe Defendants") be dismissed.

## I. FACTUAL BACKGROUND

On June 30, 2006, Defendant Oswald Peters executed a note to evidence a $427,500.00 loan made to him by Option One Mortgage Corporation (the "Note"). (*See* ECF 19-1, Nov. 18, 2025 Declaration of Jamie C. Krapf ("Krapf Decl.") ¶ 3; ECF 19-12, June 2006 Note.) The Note was secured by a mortgage executed by Peters and Defendant Maureen Stanley (together, "Defendants") in favor of Option One Mortgage Corporation (the "Mortgage"), which was recorded in the Office of the City Register of the City of New York, Bronx County, against a

property located at 2659 Briggs Avenue, Bronx, New York, 10458 (the "Premises"). (*See* ECF 19-1, Krapf Decl. ¶¶ 2, 4; ECF 19-13, June 30, 2006 Mortgage.)

On April 16, 2010, the Mortgage was assigned to Plaintiff. (*See* ECF 19-1, Krapf Decl. ¶ 5; ECF 19-18, Assignment of Mortgage.) The Note was thereafter modified by loan modification agreements four different times: on January 1, 2011; March 1, 2017; July 17, 2019; and March 17, 2020. (*See* ECF 19-1, Krapf Decl. ¶ 6; ECF 19-14, 2011 Loan Modification; ECF 19-15, 2017 Loan Modification; ECF 19-16, 2019 Loan Modification; ECF 19-17, 2020 Loan Modification.) Pursuant to the terms of the Note and as modified by the most recent Loan Modification Agreement dated March 17, 2020, Defendants were obligated to make monthly payments on the principal and interest of $1,271.68 and monthly escrow payments of $509.51, beginning April 1, 2020 and continuing for every month thereafter until the principal and interest were paid in full. (*See* ECF 19-17, 2020 Loan Modification at 4.)

On July 1, 2024, Defendants defaulted on their obligation under the Note and Mortgage by failing to make their required payment. (*See* ECF 19-19, August 20, 2024 Peters Notice of Default ("Peters Not. of Def."); ECF 19-20, Nov. 15, 2024 90-Day Pre-Foreclosure Notices.)[1] On August 20, 2024, Plaintiff sent Peters a notice of default, demanding that Defendants make their overdue payments within 30 days. (*See* ECF 19-19, Peters Not. of Def.) On November 18,

---

[1] While both Mr. Jamie C. Krapf, Plaintiff's attorney, and Ms. Juliana Thurab, a Contract Management Coordinator with Plaintiff's servicer, PHH Mortgage Corporation, attested that Defendants breached their obligation under the Note and Mortgage to make payments that had become due on October 1, 2024, according to the Notices of Default that Plaintiff submitted with this motion, Defendants were in default as of July 1, 2024. (*See* ECF 19-1, Krapf Decl. ¶ 8; ECF 19-9, Nov. 11, 2025 Declaration of Julianna Thurab ("Thurab Decl.") ¶ 11.) The first Notice of Default indicates that as of August 20, 2024, Defendants owed two monthly payments, meaning July 1 and August 1, 2024, and the 90-Day Pre-Foreclosure Notices sent to Defendants indicate that Defendants were in default for 137 days as of November 15, 2024, or as of July 1, 2024. (*See* ECF 19-19, Peters Not. of Def.; ECF 19-20, 90-Day Pre-Foreclosure Notices.)

2024, pursuant to the requirements of New York Real Property Actions and Proceedings Law ("RPAPL") § 1304 for commencing a legal action against a borrower, Plaintiff sent Defendants a 90-day pre-foreclosure notice, informing them they if they did not take any steps towards curing their default within 90 days of the notice being mailed, Plaintiff could commence legal action against them. (*See* ECF 19-20, 90-Day Pre-Foreclosure Notices.) On November 19, 2024, pursuant to RPAPL § 1306, Plaintiff filed the 90-Day Pre-Foreclosure Notices sent to Defendants with the Superintendent of Financial Services. (*See* ECF 19-21, Proof of RPAPL § 1306 Filings). As of the date Plaintiff filed this motion, the default is uncured. (*See* ECF 19-9, Thurab Decl. ¶ 11.)

## II. PROCEDURAL BACKGROUND

On June 30, 2025, Plaintiff filed its Complaint against Defendants and the John Doe Defendants, who are fictious parties representing any and all parties that have or claim to have an interest or lien on the Premises that is subject to the Mortgage. (*See* ECF 1, June 30, 2025 Complaint ("Compl.") ¶¶ 3-5.) On September 8, 2025, Plaintiff personally served Stanley with copies of the Summons and Complaint, as well as the notices required by RPAPL § 1303 for actions foreclosing mortgages on residential properties and by RPAPL § 1320 for actions foreclosing mortgages on residential properties with three or fewer units. (*See* ECF 11, Oct. 7, 2025 Stanley Affidavits of Service ("Stanley Affs. of Serv.")) On September 11, 2025, Plaintiff served Peters with copies of the Summons, Complaint, and RPAPL § 1303 and RPAPL § 1320 notices that it had previously sent by affixing said copies on the door of Peters' home and mailing copies of those papers ("nail and mail service"). (*See* ECF 10, Oct. 7, 2025 Peters Affidavits of Service ("Peters Affs. of Serv.")

On October 7, 2025, Your Honor extended Defendants' deadline to answer the Complaint until October 24, 2025. (*See* ECF 12, Oct. 7, 2025 Order.) On November 7, 2025,

Plaintiff filed a request for a certificate of default, alleging that Defendants failed to timely respond to the Complaint. (*See* ECF 15, Nov. 7, 2025 Proposed Clerk's Certificate of Default; ECF 16, Nov. 7, 2025 Affirmation of Jamie Krapf.) On November 10, 2025, the Clerk of Court entered a certificate of default as to Peters and Stanley.

On December 8, 2025, Plaintiff filed this Motion, requesting (i) a default judgment against Defendants; (ii) a judgment of foreclosure and sale and appointment of a referee to conduct a foreclosure auction of the Premises; (iii) dismissal and amendment of the Complaint as to the John Doe Defendants; and (iv) and further relief deemed just and proper by the Court. (*See* ECF 19, Plaintiff's Motion for Judgment of Foreclosure and Sale ("Pl.'s Mot."); ECF 20, Plaintiff's Memorandum of Law in Support of Motion for Judgment of Foreclosure and Sale.) On December 10, 2025, Plaintiff served its Motion and all supporting papers on Defendants. (*See* ECF 21, Dec. 10, 2025 Certificate of Service of Motion for Default Judgment.)

On January 7, 2026, Your Honor ordered Defendants to file a response, if any, to the Motion by January 30, 2026. (*See* ECF 22, Jan. 13, 2026 Certificate of Service of Order.) On April 8, 2026, Your Honor ordered Defendants, who had not filed any opposition to the Motion, to show cause at a telephonic hearing scheduled for May 1, 2026 why a default judgment should not be entered in favor of Plaintiff for the relief it requested in the Complaint. (*See* ECF 24, Apr. 8, 2026 Order To Show Cause.)

On April 24, 2026, Your Honor referred this matter to me for a report and recommendation on the Motion. (*See* ECF 25, Apr. 24, 2026 Order of Ref.) The same day, I rescheduled the hearing for Defendants to show cause as to why a default judgment should not be entered in favor of Plaintiff to May 8, 2026. (*See* ECF 26, Apr. 24, 2026 Order to Show Cause.) Neither Defendant appeared at the hearing. (*See* ECF 28, May 8, 2026, Text Order.)

## III. DISCUSSION

### A. Jurisdiction

Before the Court can enter an order of default judgment, it must first establish that it has both personal jurisdiction over the defendants and subject matter jurisdiction over the plaintiff's claims. *See CKR Law LLP v. Anderson Invs. Int'l, LLC*, 544 F. Supp. 3d 474, 478 (S.D.N.Y. 2021).

#### 1. Personal Jurisdiction

##### *a. Legal Framework*

There are three chief requirements for a federal court's lawful exercise of personal jurisdiction: "(1) proper service upon the defendant; (2) a statutory basis for personal jurisdiction; and (3) consistency with the principles of constitutional due process." *See DISH Network L.L.C. v. Kaczmarek*, No. 19-CV-4803 (EK) (SJB), 2021 WL 4483470, at *4 (E.D.N.Y. June 24, 2021) (citing *Licci ex. Rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012)), *report and recommendation adopted as modified*, 2021 WL 4485870 (E.D.N.Y. Sept. 30, 2021).[2] The plaintiff bears the burden of demonstrating that the court has personal jurisdiction over each defendant. *See Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (citing *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999)). The plaintiff can satisfy this burden with a prima facie showing and "may rest [its] argument on the[ ] pleadings, bolstered by such affidavits and other written materials as [it] can otherwise obtain." *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, No. 12-CV-5754 (LAK) (AJP), 2013 WL 6799973, at *6 (S.D.N.Y. Dec. 20, 2013).

[2] Unless otherwise indicated, this report and recommendation omits internal quotation marks, citations, footnotes, and alterations from quoted text.

With regard to the requirement of a statutory basis for personal jurisdiction, "[t]he breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located." *Thomas v. Ashcroft*, 470 F. 3d 491, 495 (2d Cir. 2006). In New York, "[p]ursuant to [CPLR] 301, a defendant is subject to personal jurisdiction if he is domiciled in New York, served with process in New York, or continuously and systematically does business in New York." *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015).

Under Rule 4(e)(1) of the Federal Rules of Civil Procedure, service is proper when carried out by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under Rule 308 (1) and (2) of New York's Civil Practice Law and Rules ("CPLR"), service of a summons is proper when the summons is (1) personally delivered to a defendant or (2) delivered "to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the [defendant]" and mailed to the defendant at their "last known residence" or "actual place of business." CPLR § 308(1)-(2).

If service cannot be made "with due diligence" by the methods prescribed under Rule 308(1) and (2), under Rule 308(4), nail and mail service may properly be made by (i) "affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the [defendant]," (ii) by mailing the summons to the defendant at his "last known residence or . . . actual place of business in an envelope bearing the legend 'personal and confidential' and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served" within twenty days of such affixing, and (iii) filing proof of compliance with

the first two requirements of Rule 308(4) within twenty days of the latter of the affixing or mailing of the summons. CPLR § 308(4).

Whether personal service can be made with due diligence is determined "on a case by case basis after considering the totality of the circumstances, with emphasis on the quality of the process server's efforts." *Lask v. Rhee-Karn*, No. 24-CV-02666 (MMG), 2025 WL 2717474, at *4 (S.D.N.Y. Sept. 24, 2025). Generally, courts have found that making at least three unsuccessful attempts to personally serve a defendant on non-consecutive days constitutes sufficient evidence that service cannot be made with due diligence. *See Lask v. Rhee-Karn*, No. 24-CV-2666 (MMG) (RWL), 2025 WL 1983441, at *11 (S.D.N.Y. May 6, 2025), *report and recommendation adopted*, 2025 WL 2717474 (S.D.N.Y. Sept. 24, 2025). However, "some courts will find that three attempts is not enough, if the process server does not make inquiries about the defendant's residence or employment." *Id.* At bottom, "the due diligence requirement of CPLR 308(4) must be strictly observed, given the reduced likelihood that a summons served pursuant to that section will be received." *Id.* (quoting *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002)).

Once a plaintiff makes a prima facie showing that there is a statutory basis for jurisdiction, the plaintiff must "demonstrate that the exercise of personal jurisdiction comports with due process." *Charles Schwab Corp. v. Bank of Am. Corp*., 883 F.3d 68, 82 (2d Cir. 2018). The Due Process Clause requires a defendant to have "such contacts with the forum [s]tate that the maintenance of the suit is reasonable . . . and does not offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). The focus of this inquiry is "the defendant's relationship to the forum [s]tate"; the Due Process Clause is satisfied if the court has general or specific personal jurisdiction over the

defendant, and, in the case of general personal jurisdiction, among other means, "an individual is subject to general jurisdiction in her place of domicile." *Id.* at 358-59.

*b. Analysis*

i. Service

Stanley was properly served under CPLR 308(1) because she was personally served with the summons and Complaint on September 8, 2025 and mailed a copy of the documents on September 10, 2025. (*See* ECF 11, Stanley Affs. of Serv.)

As to service on Peters, Plaintiff attempted to personally serve the summons and Complaint on him at the Premises six different times: on September 3, 2025 at 7:48 AM; on September 5, 2025 at 3:17 PM and 7:42 PM; on September 6, 2025 at 11:44 AM and 7:27 PM; and on September 9, 2025 at 2:22 PM. (*See* ECF 10, Peters Affs. of Serv. at 2, 4.) Plaintiff also attempted to personally serve Peters at 339 S. 6th Ave Fl. 1, Mount Vernon, NY 10550 four times: on September 5, 2025 at 7:20 AM; on September 6, 2025 at 8:55 AM; on September 8, 2025 at 12:10 PM; and on September 9, 2025 at 7:47 PM. Plaintiff does not specify whether this Mount Vernon address is Peters' actual place of business, dwelling place, usual abode, or last known residence. (*See Id.* at 3.) Plaintiff also conducted searches through the DMV, the Board of Elections, and the United States Department of Defense Manpower Data Center for active duty members of the military to find any additional information or addresses "that would help effect service on" Peters, but Plaintiff did not find any further information. (*See id.* at 1, 6-8.)

Plaintiff then carried out nail and mail service by affixing the summons and Complaint to the door of Peters' dwelling place on September 11, 2025, mailing the summons and Complaint to Peters' last known residence on September 16, 2025 and filing proof of his nail and mail service on Peters on October 7, 2025. (*See id.* at 1, 5.)

Whether Plaintiff attempted to locate or serve Peters at his place of business is unclear; the relevant Affidavit of Service inconclusively states: "A place of business was attempted and the results are as follows, the person spoken to at the [place of business] address confirmed/denied that the defendant works at this location." (*See id.* at 1.) While "[t]here is substantial authority for the proposition that three attempts at residential service do not satisfy the due diligence requirement where the process-server made no attempt to serve the defendant at his actual place of business, in particular where the place of business was known . . . , New York case law is not . . . wholly consistent on this point." *Sartor*, 70 F. App'x at 14. Indeed, both state and federal courts in New York have found that the diligence requirement of CPLR 308(4) was met without addressing whether the plaintiff had attempted to serve the defendant at his actual place of business. *See G & G Closed Cir. Events, LLC v. Clayton*, 779 F. Supp. 3d 317, 330 (E.D.N.Y. 2025) (holding that the "[plaintiff] exercised due diligence and was entitled to avail itself of nail and mail service" under CPLR 308(4) when it attempted to personally serve a summons and complaint on the defendant at her apartment on four separate occasions); *Barberan v. Nationpoint*, No. 07-CV-11595 (KMK), 2009 WL 10740072, at *3 (S.D.N.Y. Sept. 16, 2009) (holding the same when the plaintiff made four attempts to serve the defendants at their usual abode on four consecutive days at four different times); *HSBC Bank USA, N.A. v. Hanchard*, 97 N.Y.S.3d 67, 68 (1st Dep't 2019) (holding the same when the plaintiff attempted to serve the defendant at his last known address "on three separate occasions and times").

I am satisfied that Peters could not be personally served with due diligence based on Plaintiff's ten attempts to personally serve him at different locations and on different days, and times and based on Plaintiff's attempts to find more information about Peters' whereabouts.

These efforts demonstrate the quality required to conclude that Plaintiff exercised sufficient due diligence to justify proceeding with nail and mail service.

Additionally, while Plaintiff did not file its proof of service within 20 days of affixing or mailing the summons and Complaint to Peters, "the requirement in CPLR 308(4) that proof of service be filed with the clerk of the court within 20 days of affixing or mailing of the summons and complaint . . . does not relate to the jurisdiction acquired by service of the summons." *Tokio Marine and Nichido Fire Ins. Co., Ltd. v. Canter*, No. 09-CV-5599 (PKL), 2009 WL 2461048, at *10-11 (S.D.N.Y. Aug. 11, 2009) (explaining that "failure to file a timely proof of service is a curable procedural irregularity" and not a "jurisdictional defect" and holding that the plaintiffs' failure to file an affidavit of service within twenty days of their nail and mail service was not grounds to grant a motion to dismiss where the plaintiffs cured the procedural irregularity by filing the affidavit of service 62 days after completing nail and mail service); *see also Gen. Ins. v. Leandre*, 206 N.Y.S.3d 2, 4 (1st Dep't 2024) (explaining that the plaintiffs' "failure to file affidavits of service with the clerk of the court within 20 days of service [wa]s a mere irregularity rather than a jurisdictional defect and d[id] not render the service of process a nullity" and reversing the lower court's denial of a motion for default judgment as to a defendant whom the plaintiff served via nail and mail service without filing the affidavit of service until ten days after filing a motion for default judgment). Accordingly, Plaintiff's filing of its proof of service on Peters one day late does not prohibit the Court from finding that Peters was properly served for jurisdictional purposes.

For the purposes of the jurisdictional analysis, Plaintiff has properly served both Defendants.

ii. Statutory and Constitutional Bases for Personal Jurisdiction

The Court has both a statutory and a constitutional basis for exercising personal jurisdiction over Defendants. The Court's exercise of general personal jurisdiction over Defendants under CPLR 301 is proper; both Defendants are domiciled within the District. *See supra* Part III.A.2.b; *see also Bos. Safe Deposit & Tr. Co. v. Morse*, 779 F. Supp. 347, 349 (S.D.N.Y. 1991) (holding that a defendant domiciled in New York was subject to the Court's personal jurisdiction under CPLR 301). The Court's general personal jurisdiction over Defendants in their state of domicile means that the Due Process Clause is satisfied. *See Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (explaining that "[g]eneral [personal] jurisdiction over an individual comports with due process in the forum where he is at home, meaning the place of domicile"). Accordingly, Plaintiff has met its burden of demonstrating that the Court may properly exercise personal jurisdiction over Defendants.

2. Subject Matter Jurisdiction

*a. Legal Framework*

A court must also satisfy itself that it has subject matter jurisdiction over the action. *SeeSheldon v. Plot Com.*, No. 15-CV-5885 (CBA) (CLP), 2016 WL 5107072, at *9 (E.D.N.Y. Aug. 26, 2016) ("[C]ourts may not reach the merits of a claim before establishing subject matter jurisdiction.") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016). A defendant's default "has no bearing on an inquiry into whether the default judgment itself is void for lack of subject matter jurisdiction." *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 108 (2d Cir. 1997). "Even with defendant's default, the Court has an obligation to inquire into the existence of subject-matter jurisdiction." *Brito v. ATA Freight*

*Line, Ltd.*, No. 20-CV-3132 (EK), 2021 WL 7830146, at *3 (E.D.N.Y. Aug. 24, 2021) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125 (2d Cir. 2011)). The inquiry is not limited to the pleadings, and the court may refer to any material in the record. *See Transatl. Marine*, 109 F.3d at 108.

One basis for a court's exercise of subject matter jurisdiction over an action is 28 U.S.C. § 1332, the federal diversity jurisdiction statute. Specifically, under 28 U.S.C. § 1332(a)(1), a district court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states."

*b. Analysis*

Plaintiff alleges that the Court has subject matter jurisdiction over this dispute based on diversity jurisdiction under 28 U.S.C. § 1332(a)(1). (*See* ECF 1, Compl. ¶ 6.) Plaintiff alleges that it is domiciled in South Dakota, Defendants are domiciled in New York, and the amount in controversy exceeds $75,000. (*See* ECF 1, Compl. ¶¶ 2-4, 6.) With regard to Plaintiff's citizenship, Plaintiff's Rule 7.1 Corporate Disclosure Statement states that it both maintains its headquarters in and is a citizen of South Dakota. (*See* ECF 6, Rule 7.1 Corporate Disclosure Statement.) As for Peters, in the course of attempting to serve him, Plaintiff conducted searches with the DMV and the Board of Elections for further information on his home address, and both searches confirmed that the Premises were his place of residence. (*See* ECF 10, Peters Affs. of Serv. at 1.) As for Stanley, while the Complaint alleges that she also resides at the Premises (*See* ECF 1, Compl. ¶ 4), she was personally served at a different address, 3301 Hunter Ave, Fl. 2, Bronx, NY 10475, and additional copies of the summons and complaint were mailed

to that address. (*See* ECF 11, Stanley Affs. of Serv. at 1-2.) Nevertheless, Stanely's second address is also in the District.

The Notice of Property Value for the Premises filed with this motion states that the market value of the Premises as of January 15, 2024 was $515,000, and Plaintiff alleges that Defendants still owe $370,643.50 pursuant to the Note and Mortgage . (*See* ECF 19-8, Jan. 15, 2024 Notice of Property Value; ECF 19-9, Thurab Decl. ¶ 15; ECF 31, June 5, 2026 Business Records.) Accordingly, this Court has subject matter jurisdiction over this action.

B. Pre-Foreclosure Procedures

The RPAPL imposes pre-foreclosure requirements that are applicable even in foreclosure actions in federal court:

> Section 1303 requires the plaintiff to serve a specific notice on the defendant, with the summons and complaint. *See* RPAPL § 1303. Section 1304 requires that plaintiff serve an additional notice at least ninety days before commencing a foreclosure action. *See id.* § 1304(1). That notice must be sent "by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage." *Id.* § 1304(2). RPAPL § 1306 requires that plaintiff file certain information with the Superintendent of Financial Services, within three business days of mailing the notice required by section 1304. *See* RPAPL § 1306. Plaintiff is also required to serve a special summons once the foreclosure action is filed. *See* RPAPL § 1320. Finally, RPAPL § 1331 requires that plaintiff file a notice of pendency of the action, as well as a copy of the complaint, in the clerk's office of the county where the subject property is located. *See* RPAPL §§ 1331, 6511(a) ("Unless it has already been filed in that county, the complaint shall be filed with the notice of pendency.").

*Deutsche Bank Nat'l Tr. Co. v. Tacoaman,* No. 25-CV-1698 (MKB) (JRC), 2026 WL 498199, at *9 (E.D.N.Y. Feb. 12, 2026), *report and recommendation adopted*, 2026 WL 624360 (E.D.N.Y. Mar. 5, 2026).

Plaintiff served the requisite RPAPL §§ 1303 and 1320 notices with the summons and Complaint on both Defendants. (*See* ECF 10, Peters Affs. of Serv.; ECF 11, Stanley Affs. of Serv.)

Plaintiff served the RPAPL § 1304 notice on Defendants by both certified mail and first-class mail on November 18, 2024, 224 days before commencing this foreclosure action. (*See* ECF 19-9, Thurab Decl. ¶ 13; ECF 19-20, 90-Day Pre-Foreclosure Notices.) Plaintiff made its RPAPL § 1306 filings with the Superintendent of Financial Services on November 19, 2024. (*See* ECF 19-21, Proof of RPAPL § 1306 Filings.) Plaintiff filed a notice of pendency in the Supreme Court of the State of New York, Bronx County, on September 24, 2025, in accordance with RPAPL § 1331. (*See* ECF 19-3, Sept. 2025 Notice of Pendency.) Accordingly, Plaintiff has complied with all RPAPL's pre-foreclosure requirements.

C. <u>Default Judgments</u>

1. Legal Standard

Under Rule 55 of the Federal Rules of Civil Procedure, there is a two-step process for obtaining a default judgment: first, the plaintiff must obtain a certificate of default; and second, the plaintiff must seek a default judgment under Rule 55(b), which allows a clerk to enter a default judgment "if the plaintiff's claim is for a sum certain and the defendant has failed to appear." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011).

Courts balance three factors in considering whether to grant a default judgment: "(1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense." *J&J Sports Prods. Inc. v. 1400 Forest Ave. Rest. Corp.*, No. 13-CV-4299 (FB) (VMS), 2014 WL 4467774, at *4 (E.D.N.Y. Sept. 9, 2014) (citing *Swarna v. Al-awadi*, 622 F.3d 123, 142 (2d Cir. 2010)). Because default judgments are extreme remedies, courts must be cautious in awarding them. *See J&J Sports,* 2014 WL 4467774, at *4.

2. Analysis

Plaintiff satisfied the first step in obtaining a default judgment by obtaining a certificate of default as to both Defendants from the Clerk of Court on November 10, 2025. (*See* ECF 18, Nov. 10, 2025 Clerk's Certificate of Default.)

As to whether Defendants' default was willful, a court may infer from a defendant's failure to submit any reply after having been served that the default was willful. *See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (concluding that failing to respond to a complaint and subsequent motion for default judgment "indicate[s] willful conduct"). Here, both Defendants were served the Summons and Complaint as well as this Motion but did not respond. (*See* ECF 10, Peters Affs. of Serv.; ECF 11, Stanley Affs. of Serv.; ECF 21, Certificate of Service of Motion for Default Judgment.)

As to prejudice, delaying entry of a default judgment prejudices Plaintiff. *See Bridge Oil Ltd. v. Emerald Reefer Lines, LLC,* No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (finding that delaying entry of a default judgment prejudices the plaintiff, "as there are no additional steps available to secure relief in this court").

As to potentially meritorious defenses, Defendants have not presented any defenses.

As such, the three factors weigh in favor of Plaintiff, and I therefore respectfully recommend that a default judgment be entered against Defendants Peters and Stanley.

D. <u>Liability</u>

1. Legal Standards

Upon a defendant's default, the Court must accept all the plaintiff's well-pleaded factual allegations as true, drawing all inferences in favor of the plaintiff, but must still determine

whether the plaintiff's allegations establish the defendant's liability as a matter of law. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). On a motion for default judgment, "the burden is on the plaintiff to establish an entitlement to recovery, and a failure to plead sufficient facts may require the denial of the motion." *J&J Sports*, 2014 WL 4467774, at *5.

If the court finds that the well-pleaded allegations demonstrate liability, the court then analyzes "whether [p]laintiff has provided adequate support for [its requested] relief . . . ." *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). If, however, the court finds that the complaint fails to state a claim on which relief may be granted, the court may not award damages, "even if the post-default inquest submissions supply the missing information." *Perez v. 50 Food Corp.*, No. 17-CV-7837 (AT) (BCM), 2019 WL 7403983, at *4 (S.D.N.Y. Dec. 4, 2019), *report and recommendation adopted*, 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020).

Under New York law, a plaintiff mortgagee establishes the liability of a mortgagor by showing "(1) a mortgage, (2) a note, and (3) proof of default on that note." *Wilmington PT Corp. v. Salomon*, No. 20-CV-4068 (DRH) (ST), 2021 WL 2689220, at *4 (E.D.N.Y. June 9, 2021), *report and recommendation adopted*, 2021 WL 2685635 (E.D.N.Y. July 1, 2021). A plaintiff mortgagee's establishment of those elements confers to it "a presumptive right to foreclose, which can only be overcome by an affirmative showing by the mortgagor." *U.S. Bank N.A. v. Squadron VCD, LLC*, No. 10-CV-5484 (VB), 2011 WL 4582484, at *4 (S.D.N.Y. Oct. 3, 2011).

2. Analysis

Here, to meet the first two elements, Plaintiff has submitted the Mortgage, the assignment of the Mortgage, the Note, the related loan modifications, and the unanswered notices of Defendants' default. (*See* ECF 19-12, June 2006 Note; ECF 19-13, Mortgage; ECF 19-

14, 2011 Loan Modification; ECF 19-15, 2017 Loan Modification; ECF 19-16, 2019 Loan Modification; ECF 19-17, 2020 Loan Modification; ECF 19-18, Assignment of Mortgage.) Plaintiff demonstrated Defendant's default on the Note by submitting the notices of default sent to Defendants, a declaration from the Mortgage servicer, who attested to sending Defendants the notices of default and to Defendants' failure to cure their defaults, and an accounting of all amounts Defendants owe Plaintiff pursuant to the Note and Mortgage. (*See* ECF 19-9, Thurab Decl. ¶¶ 11-13; ECF 19-19, Peters Not. of Def.; ECF 19-20, 90-Day Pre-Foreclosure Notices; ECF 31, Business Records.)

Accordingly, Plaintiff has established Defendants' liability under the Mortgage and Note, and I respectfully recommend that the Court grant Plaintiff's motion for a default judgment. *See U.S. Bank, N.A. v. Squadron VCD,* LLC, 504 Fed. App'x 30, 32-33 (2d Cir. 2012) (affirming grant of summary judgment in the plaintiff's favor in a foreclosure action where the plaintiff "presented copies of the note and the mortgage" and "undisputed evidence of [the defendant's] default); *Salomon*, 2021 WL 2689220, at *4 (holding that the plaintiff demonstrated a defaulting defendant's liability in a foreclosure action by "producing a valid mortgage, note, and relevant assignments" and showing the defendant's "default on [its] loan obligations by providing a notice of default, mailing receipts, and an affidavit from Plaintiff").

E. Remedies

Plaintiff does not seek a money judgment but instead asks for a judgment for foreclosure and sale of the Premises and the appointment of a referee to conduct the foreclosure auction of the Premises pursuant to the terms of its proposed judgment of foreclosure and sale. (*See* ECF 19, Pl.'s Mot. at 2.)

1. Legal Standards

If a plaintiff has established that its well-pleaded factual allegations demonstrate a defendant's liability, the Court then analyzes "whether [p]laintiff has provided adequate support for [its requested] relief . . . ." *Gucci*, 678 F. Supp. 2d at 119 (citing *Credit Lyonnais Sec.*, 183 F.3d at 155). A court considers allegations relating to requested relief differently from allegations relating to liability, which are deemed admitted on an entry of default. "[A]llegations in the complaint relating to [the plaintiff's requested relief] are not deemed admitted upon entry of default; instead, the court considers whether the plaintiff has met the burden of proving" its entitlement to the requested relief. *Barbara S. Parrett Fam. P'ship, Ltd. v. Quantum Realty Dev., Inc*., No. 23-CV-0407 (FB) (ST), 2024 WL 1530936, at *4 (E.D.N.Y. Feb. 29, 2024), *report and recommendation adopted*, 2024 WL 1364322 (E.D.N.Y. Apr. 1, 2024).

2. Judgment of Foreclosure and Sale

In a foreclosure action, "by presenting a note, a mortgage, and proof of default," a plaintiff mortgagee "creates a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor." *U.S. Bank Nat'l Ass'n v. McDermott*, No. 20-CV-0352 (KMK), 2022 WL 2392522, at *5 (S.D.N.Y. July 1, 2022).

Plaintiff has provided the requisite note, mortgage and proof of default that creates a presumptive right to foreclose. *See supra* Part III.C. As Defendants have not answered the complaint or opposed this Motion, they have not made any affirmative showing to rebut Plaintiff's presumptive right. Accordingly, I respectfully recommend that Plaintiff be granted a judgment of foreclosure and sale. *See Salomon*, 2021 WL 2689220, at *5-6 (holding that the plaintiff was "entitled to foreclose upon and sell [the mortgaged] property" by demonstrating "the existence of an obligation secured by a mortgage, and a default on that obligation").

3. Appointment of Referee

RPAPL § 1611 states: "[w]hen the final order authorizes a mortgage, lease or sale upon the application of a person who is not trustee, the court in such final order must appoint a referee to execute the authorized transaction." *U.S. Bank Trust, N.A. v. Dingman*, No. 16-CV-1384 (CS), 2016 WL 6902480, at *4 (S.D.N.Y. Nov. 22, 2016). Additionally, "courts in this Circuit have permitted such appointments where the plaintiff established a prima facie case by presenting a note, a mortgage, and proof of default." *Id.*

Plaintiff has established a prima facie case by providing a note, a mortgage, and proof of default. *See supra* Part III.C. Therefore, I respectfully recommend that, in accordance with Plaintiff's proposed Judgment of Foreclosure and Sale, Scott H. Siller be designated as the referee to carry out the foreclosure and sale of the Premises and be paid not more than $750.00 for his services as referee. *See Salomon*, 2021 WL 2689220, at *6 (holding that $750 was an appropriate fee for a foreclosure referee); *Windward Bora LLC v. Baez*, No. 19-CV-5698 (PKC) (SMG), 2020 WL 4261130, at *5-6 (E.D.N.Y. July 24, 2020) (same); *OneWest Bank, N.A. v. Conklin*, 310 F.R.D. 40, 46 (N.D.N.Y. 2015) (same).

F. <u>Attorneys' Fees and Costs</u>

Plaintiff seeks attorneys' fees in the amount of $6,800.00 and costs in the amount of $2,703.50 pursuant to the terms of the Mortgage. (*See* ECF 19-6, Dec. 8, 2025 Declaration of Jamie C. Krapf Supporting Plaintiff's Request for Reasonable Attorneys' Fees ("Fees Decl.") ¶ 2.)

1. Legal Standard

A plaintiff mortgagee or lender may recover attorneys' fees in a foreclosure action where the mortgage or loan documents provide for such recovery, so long as the requested fees are reasonable and the plaintiff provides "information sufficient to allow the Court to

assess that issue." *Onewest Bank N.A. v. Louis*, No. 15-CV-0597 (PAC) (BCM), 2016 WL 3552143, at *10 (S.D.N.Y. June 22, 2016), *report and recommendation adopted*, 2016 WL 4059214 (S.D.N.Y. July 28, 2016). In assessing an application for attorneys' fees, courts award counsel the "presumptively reasonable fee," which is calculated by multiplying the reasonable hourly rate by the number of hours that were reasonably expended to litigate the action. *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009); *see also Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).[3]

In considering the reasonableness of the hourly rate, the Court's analysis is guided by the prevailing market rate for similar services. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). The Court also considers factors including the attorneys' experience, reputation, and ability; the time, labor, and skill required; the novelty and complexity of the legal issues posed; awards in similar cases; and degree of success. *See Agudath Israel of America v. Hochul*, No. 22-38-CV, 2023 WL 2637344, at *2 n.2 (2d Cir. Mar. 27, 2023). Additionally, contemporaneous time records are required. *See N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983). "Even where the attorney charges the client a flat fee, courts have permitted such awards where the attorney also presented contemporaneous time records but have denied these awards where the attorney failed to maintain and produce contemporaneous time records." *Dingman*, 2016 WL 6902480, at *6.

---

[3] Plaintiff does not invoke Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure in connection with its request for attorneys' fees, which provides that a motion for attorneys' fees must "be filed no later than 14 days after the entry of judgment." Judgment has not yet been entered. Rule 54(d)(2)(B) "generally governs the timing of a motion for attorney's fees," but it "only explicitly sets a deadline by which a motion for attorney's fees must be filed; it does not prohibit the filing of such a motion before the entry of judgment." *Beata Music LLC v. Danelli*, No. 18-CV-6354 (JGK), 2022 WL 1471031, at *1 n.2 (S.D.N.Y. May 10, 2022). Accordingly, the request for attorneys' fees and costs is not premature.

Fee awards typically include those reasonable out-of-pocket costs incurred by the attorney, including for items such as "shipping, filing fees, process servers, and litigation support." *HSBC Bank USA, N.A. v. PAKS Holdings, LLC*, No. 19-CV-10193 (PGG) (JLC), 2021 WL 667661, at *8 (S.D.N.Y. Feb. 22, 2021).

2. Analysis

Plaintiff seeks $6,800 in attorneys' fees and $2,703.50 in costs incurred in connection with this litigation in accordance with the terms of the Mortgage. (*See* ECF 19-6, Fees Decl. ¶ 2.) Plaintiff's counsel submitted an attorney declaration testifying to the fees charged and the estimated billable hours spent on this matter and an accounting of all costs. (*See generally* ECF 19-5, Dec. 8, 2025 Bill of Costs; ECF 19-6, Fees Decl.)

The Mortgage makes clear that Plaintiff is entitled to reasonable attorneys' fees and costs incurred in connection to an action for foreclosure and sale of the Premises; it states, in relevant part: "[i]n any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount [the borrower] owe[s] Lender." (ECF 19-13, Mortgage ¶ 21.) It further states that "Borrower shall pay to [ ] Lender . . . foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument." (*Id.* ¶ 27.) These provisions support an award of reasonable attorneys' fees and costs to Plaintiff. *See Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 95 (2d Cir. 2013) (upholding a professional fee provision in a loan contract).

Plaintiff's request for $6,800.00 in attorneys' fee is based on its "flat fee of $6,800 . . . for each foreclosure action handled." (ECF 19-6, Fees Decl. ¶ 9.) As such, Plaintiff does not provide contemporaneous billing records but instead submits its own calculation of "the

estimated billable hours for each itemized service rendered by the firm in connection with this action." (*Id.* ¶ 8.) Plaintiff's submission states that it typically charges $330 per hour for attorneys and $100 per hour for paralegals, and that it estimates that the total billable hours expected to be spent in this action was 40 hours, with an estimated 12.5 hours being for billable work by attorneys and 27.5 hours being for billable work of paralegals; the cost of that work at these rates would be $6,875.00. (*See id.* ¶¶ 6-9.)[4]

Generally, Courts in this Circuit will not award attorneys' fees based on a flat rate "unless the supporting documentation is detailed enough to satisfy the Second Circuit's requirement that attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done." *Tacoaman*, 2026 WL 498199, at *9; *see also United States v. Basile*, No. 19-CV-7022 (JS) (ARL), 2023 WL 5152519, at *4 (E.D.N.Y. June 27, 2023) (holding same), *report and recommendation adopted*, 2023 WL 5525096 (E.D.N.Y. Aug. 28, 2023). When a request for attorneys' fees based on a flat fee is supported with limited documentation, courts in this Circuit have awarded attorneys' fees at 50 percent of the requested amount. *See, e.g.*, *Deutsche Bank Nat'l Tr. Co. v. Tait*, No. 25-CV-1562 (ENV) (JAM), 2026 WL 1827186, at *18 (E.D.N.Y. June 25, 2026) (awarding the plaintiff half of the requested attorneys' fees where the amount was based on a flat rate and supported by an estimate of the hours worked but not by contemporaneous time records), *report and recommendation adopted*, Text Order Dated July 15, 2026; *Wells Fargo Bank, N.A. v. Drepaul*, No. 25-CV-2185 (DG) (RML), 2026 WL 1080004, at *5 (E.D.N.Y. Feb. 17, 2026) (same), *report and recommendation adopted*, Text Order Dated Mar. 11, 2026; *Tacoaman*, 2026 WL 498199, at

---

[4] While the declaration states that Plaintiff's counsel estimates spending 39 billable hours total based on the chart of billable activities and estimated hours spent that is appended to the declaration, the chart itself accounts for 40 hours of work. (*See* ECF 19-6, Fees Decl. at 6-7.)

*10 (same); *but see Dingman*, 2016 WL 6902480, at *6 (denying the plaintiff's request for attorneys' fees where the request was based on a flat fee but was supported only by "retroactively create[d] time records [ ] breaking the total requested award into tasks of attorneys and paralegals").

Accordingly, I respectfully recommend that Plaintiff be awarded 50 percent of its requested attorney's fees in the amount of $3,400.00, which is consistent with what the same counsel has been awarded for the same charged flat fee and the same estimated hours worked. *See Tait*, 2026 WL 1827186, at *19 (awarding $3,400 based on a flat fee request of $6,800)*;* *Drepaul*, 2026 WL 1080004, at *5 (same); *Tacoaman*, 2026 WL 498199, at *10 (same).

As support for the requested amount for costs, Plaintiff submits an accounting of all costs incurred in connection with this foreclosure action, which are for the filing fee for this case, a filing fee for a notice of pendency, a title search, and service of process, totaling $2,703.50. (*See* ECF 19-5, Bill of Costs at 1.) Plaintiff also provides invoices and receipts for all these costs (*See id.* at 3-9.) Courts will generally award all "reasonable and identifiable out-of-pocket disbursements" so long as the requesting party has "submitted adequate documentation in support of payment." *Dingman*, 2016 WL 6902480, at *5. Plaintiff has submitted the requisite documentation and accordingly should be awarded $2,073.50 in costs.

G. <u>Amendment of the Caption</u>

Plaintiff requests that the John Doe Defendants be dismissed from the case and that the caption be amended accordingly. (*See* ECF 19, Pl.'s Mot. at 2.)

Rule 15 of the Federal Rules of Civil Procedure empowers Courts to "freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15; *see also RTC Mortg. Tr. 1995-S/N1 v. Polmar Realty, Inc.*, No. 91-CV-6685 (SAS), 1996 WL 689281, at *5 (S.D.N.Y. Nov. 27,

1996) (holding that under Rule 15, "leave to amend pleadings shall be freely given when justice so requires").

Under New York law, tenants of a property subject to a foreclosure action are necessary defendants in mortgage foreclosure actions. *See* RPAPL § 1311(1). Plaintiff has not identified or served the John Doe Defendants. While Plaintiff has not made any affirmative allegations regarding whether there are tenants living at the Premises who have not been named as Defendants in this action, Plaintiff filed a notice of property value with its motion that describes the Premises as having only one residential unit (*see* ECF 19-8, Notice of Property Value), and the Complaint alleges that Defendants reside at the Premises (*see* ECF 1, Compl. ¶¶ 3-4). Taking all the factual allegations as true and making all inferences in favor of Plaintiff as I must, I infer that Defendants are the only tenants of the Premises.

Accordingly, since Plaintiff has not identified or served any John Doe Defendant within 90 days of filing the Complaint and does not seek default judgment against them, dismissal of the John Doe Defendants and corresponding amendment of the caption is appropriate under Rule 4(m) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(m); *see also U.S. v. Herbster*, 726 F. Supp. 3d 175, 182 (W.D.N.Y. 2024) ("As Plaintiff has not identified or served [the John Doe Defendants] within 90 days after filing the Complaint, and does not seek default judgment against them, dismissal is proper under Federal Rule of Civil Procedure 4(m).").

## **CONCLUSION**

For the foregoing reasons, I respectfully recommend that (i) Plaintiff's motion for a default judgment against Defendants be GRANTED, (ii) Plaintiff be granted a judgment of foreclosure and sale of the Premises; (iii) Scott H. Siller designated as the referee to perform the foreclosure and sale of the Premises in accordance with the proposed judgment of

foreclosure and sale and be paid not more than $750.00 for his services as referee; (iv) the Complaint against the John Doe Defendants be dismissed and the caption be amended accordingly, and (v) Plaintiff be awarded $3,400.00 in attorneys' fees and $2,073.50 in costs.

DATED: August 13, 2026
New York, NY

RESPECTFULLY SUBMITTED,

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. Plaintiff shall serve a copy of this report and recommendation on Defendants by mail and email at Defendants' last known addresses within two days of the filing of this report and recommendation and shall file proof of such service on the docket on the same day that such service is made. A party may respond to another party's objections within fourteen days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections or responses to objections must be addressed to Judge Abrams.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 145 (1985).